UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 1:05-CR-220

JOHN STANLEY CLARK,                HON. GORDON J. QUIST

        Defendant.
_____/

**OPINION**

Defendant, John Stanley Clark ("Clark"), has been charged in a two-count indictment in connection with the attempted receipt and possession of child pornography. Count One of the indictment charges Clark with attempted receipt of two videotapes containing child pornography, in violation of 18 U.S.C. § 2252(a)(2). Count Two of the indictment charges Clark with possession of two computer hard drives containing four and fifteen computer files, respectively, of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Clark has filed a motion to dismiss, in which he argues that the indictment should be dismissed based upon prejudicial delay and because the Government failed to allege prior convictions within the indictment. In addition, Clark has moved to suppress all evidence seized during a search of his residence on April 21, 2004, pursuant to a search warrant issued by United States Magistrate Judge Carmody. The Court heard oral argument and received testimony regarding the motions at a hearing held on May 12, 2006, and the Government has submitted a post-hearing brief with regard to the issue of whether probable cause existed to support a search of Clark's computer for child pornography. For the reasons stated below, the Court will deny both motions.

**Findings of Fact**

In 2004, in connection with an undercover investigation targeted at individuals who are interested in purchasing or collecting images of child pornography, Postal Inspector Richard Irvine ("Irvine") of Boston, Massachusetts, placed an advertisement on the internet offering to sell sexual videos of young boys. He gave an e-mail address of Drpeterforeskin@yahoo.com as a contact for persons interested in purchasing videos. On March 11, 2004, an individual using the name grtrek98@yahoo.com contacted Irvine and indicated an interest in purchasing some child pornography. Irvine thereafter engaged in a series of communications, both by U.S. mail and e-mail, with the individual that lasted through April 5, 2004. One of the communications was a letter addressed to "Peter F. PO Box 72 Stetson, ME 04488" submitting an order for two videotapes to be delivered to "J. S. Clark at 116 S. Alger Street, Lansing, Michigan 48917," along with a money order for $50 in payment for the tapes. Irvine sent a confirming letter containing a test phrase, "Go Red Sox," to the residence address, and Clark sent back the test phrase via e-mail.

Further investigation of various databases, mail deliveries, and parked cars indicated that two men lived at the 116 S. Alger address: Clark and Dennis Dewey. The Internet Protocol (IP) address on the e-mail from Clark was 67.162.215.247, which belonged to Comcast. Information furnished by Comcast established that the account to which the IP address was assigned belonged to Dennis Dewey at 116 Alger Street in Lansing.

Based upon this information, the Government sought a warrant to search 116 S. Alger following the controlled delivery of the two videotapes. In support of the warrant request, the Government submitted an affidavit from Postal Inspector Arthur A. Van de Putte. Magistrate Judge Carmody issued the search warrant on April 16, 2004. The warrant authorized a search for materials listed on the attached Attachment A. In addition to the two videotapes, items to be searched for in

the residence included: (1) records, documents, correspondence, and other items indicating contact via mail or computer with Drpeterforeskin@yahoo.com and/or Peter F., PO Box 72, Stetson, ME 04488; (2) computers and all related computer equipment, manuals, software, and other items and information used in connection with operating computers (to be returned after examination if found not to contain evidence of use for purposes related to child pornography); (3) computer storage media, including hard drives, diskettes, CDs, and zip disks (to be returned after examination if found not to contain evidence of use for purposes related to child pornography); (4) child pornography in any form; and (5) records, documents, correspondence, and other items regarding possession or attempted possession of child pornography.

The controlled delivery was made on April 21, 2004. Mr. Dewey was present at the address and accepted the package for Clark. When the agents informed Mr. Dewey of the nature of the package and that they had a search warrant, Mr. Dewey became angry about receiving the package and said he was not involved. He told the agents that Clark rented a room from him and that he allowed Clark to use his computer, which was connected to the internet. Mr. Dewey told the agents that Clark had a computer in his own room. Mr. Dewey called Clark to tell him that the package had arrived, and Clark returned to the house. During an interview, Clark confessed that he knowingly ordered child pornography, that there was lots of child pornography on the computer in his room, and that there were a few images on Mr. Dewey's computer.

In addition to the tapes that were delivered, the agents seized the two computers, videotapes, more than 100 diskettes, and various documents. Images of child pornography were found on one of the seized computers and some of the diskettes.

On August 4, 2004, the Government received the results of the examination of the seized computer. On February 10, 2005, the Government received the agent's report summarizing the

3

evidence. On September 14, 2005, the Government received a report identifying images of known children. The indictment was returned on September 28, 2005.

## Conclusions of Law

### I.   Motion to Suppress

Initially, in his motion to suppress, Clark argued that the warrant was invalid because the Van de Putte affidavit failed to establish that probable cause existed to believe that contraband would be found at 116 S. Alger, Lansing, Michigan 48917. Clark further argued (although he did not cite any authority) that Government agents created the grounds to believe that child pornography videotapes would be found at the premises and that there is no probable cause when the Government creates the circumstances giving rise to probable cause. Clark also argued that the search warrant fails to establish a reason to believe that any computer in Clark's residence would have child pornography on it. Finally, Clark argued that his statement should be suppressed because he would not have made it to the agents if he had not been confronted by the illegal search. In a supplemental brief filed a few days before the May 12 hearing, Clark asserted the additional argument that the warrant was invalid because it "fails to describe with particularity what contents of the computer hard drive are sought and thus fails to meet the warrant particularity requirement of the Fourth Amendment." (Def.'s Reply Mot. Suppress at 1.)

"Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999) (quoting United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990)). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998) (internal quotation marks omitted). The existence of probable cause must be determined using a "totality of

4

the circumstances" test; that is, the question is whether, given all of the facts known to the police officer, there is a fair probability that contraband or evidence will be found in a particular place. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983).

Contrary to Clark's argument, the Van de Putte affidavit contains sufficient facts to establish probable cause to believe three things. First, that Clark had engaged in several communications with Irvine and a transaction in which he purchased two videotapes containing child pornography to be delivered to 116 Alger Street. The affidavit shows that the e-mails were sent by someone who identified himself as J. S. Clark residing at 116 S. Alger Street, Lansing, Michigan; that further investigation revealed that two individuals named John Clark and Dennis Dewey lived at the 116 S. Alger Street address; and that Comcast traced the IP number associated with the e-mails from grtrek98@yahoo.com to the account of Mr. Dewey at the 116 Alger Street address. Second, the affidavit shows that it was reasonable to conclude both that the computer that Clark used to send the e-mails to Irvine would be located at 116 S. Alger and that evidence of the communications between Clark and Irvine would be found on Mr. Dewey's computer connected to the internet because the e-mails from grtrek98@yahoo.com were associated with the IP number assigned to Mr. Dewey's Comcast account. Finally, the affidavit establishes a reasonable basis to infer that Clark used a computer to collect and store images of child pornography and that such materials would be found in his residence. In particular, Van de Putte set forth facts describing how computers and the internet enable collectors of child pornography to easily locate and acquire images of child pornography, (Van de Putte Aff. ¶ 25), and, as set forth elsewhere in the affidavit, Clark made extensive use of a computer to locate and acquire child pornography from Irvine. He also related that in his experience, collectors of child pornography typically maintain collections of child pornography in secure locations, such as their homes. (Id. ¶ 23.) Van de Putte also stated that individuals have been known

to store images of child pornography on computer hard drives, floppy disks, CD-ROMs, zip disks, and files stored off-site with an internet provider and that examination by a computer expert is the only means of accessing such evidence. (Id. ¶ 26.) Finally, at the May 12 hearing, Van de Putte testified that based upon his conservative estimate, of the 25 or so similar cases that he has handled, child pornography was found on the suspect's computer in at least 15 cases. As the Sixth Circuit has observed, "while officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." United States v. Strickland, 144 F.3d 412, 415-16 (6th Cir. 1998). The information contained in the Van de Putte affidavit is more than sufficient to meet this standard.[1]  See United States v. Long, No. 94-5117, 1994 WL 669538, at *5-9 (6th Cir. Nov. 29, 1994) (concluding that there was probable cause to believe that additional child pornography materials would be found in the defendant's residence where the defendant had ordered and taken delivery of child pornography, where the affiant set forth his belief based upon his experience that other items of child pornography would be found at the residence, and there was no evidence to suggest that the defendant had not previously received such material); United States v. Simpson, 152 F.3d 1241, 1246 (10th Cir. 1998) (concluding that probable cause existed where the affidavit described an agreement between the police officer and the defendant in which the officer was to deliver to the defendant a computer diskette with sexual images of children in exchange for a videotape containing child pornography and money; although the delivery never occurred, the agreement had been reached in an internet chat room dedicated to child pornography,

---

[1] Having concluded that the affidavit was sufficient to establish probable cause, the Court finds it unnecessary to address the Government's good faith exception argument under United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405 (1984).

6

and the affiant stated that based upon his experience in similar cases, child pornography materials would likely be present).

The Court also rejects Clark's argument that the warrant fails to comply with the Fourth Amendment's particularity requirement. The Fourth Amendment provides that warrants shall "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Particularity 'eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure.'" United States v. Greene, 250 F.3d 471, 476-77 (6th Cir. 2001) (quoting United States v. Blakeney, 942 F.2d 1001, 1026 (6th Cir. 1991)). The Sixth Circuit uses a two-part test to determine whether a warrant satisfies the particularity requirement: (1) whether the place to be searched or thing to be seized is described with sufficient particularity to enable the officers to locate the premises or things with reasonable effort; and (2) whether there is reasonable probability that some other premises or thing might be mistakenly searched or seized. See United States v. King, 227 F.3d 732, 750 (6th Cir. 2000). A description is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit." United States v. Ables, 167 F.3d 1021, 1033 (6th Cir. 1999). Citing United States v. Riccardi, 405 F.3d 852 (10th Cir. 2005), Clark contends that the warrant in this case did not meet the particularity requirement because it purported to authorize a search of his computer without any limitation regarding the scope of the contents on the hard drive. Riccardi, however, is distinguishable from this case. In Riccardi, the court noted that the warrant permitted the officers to search for virtually anything on the defendant's computer "from child pornography to tax returns to private correspondence." Id. at 863. In contrast, the warrant in this case limited the search to "[c]hild pornography in any form including . . . computer printed images," (Warrant Attach. A ¶ 8), and the search of computer hard-drives and other storage media was limited in scope to "evidence . . . related

7

to child pornography." (Id. ¶¶ 4, 5.)  Given that Clark could have stored files containing child pornography almost anywhere on his computer (or on other storage media), the warrant was as specific as it could have been under the circumstances.

## II.     Motion to Dismiss

In his motion to dismiss, Clark contends that the indictment must be dismissed because it fails to allege prior convictions.  The penalty provisions that apply to the charged offenses increase the mandatory minimum and maximum terms for attempted receipt if the defendant has a prior state conviction for sexual abuse of a minor or for possession, receipt, mailing, etc. of child pornography.  Similarly, a previous conviction increases the penalty for possession from a maximum of 10 years to a minimum of 10 years and a maximum of 20 years.  18 U.S.C. § 2252(b)(1) and (2).

As the Government points out, under United States v. Booker, there is no Sixth Amendment violation where the court uses prior convictions to enhance a defendant's sentence.  See 125 S. Ct 738, 756 (2005). Moreover, Clark's argument that the Government must allege his prior convictions in the indictment is without merit.  In Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998), the Supreme Court held that the government is neither required to allege in its indictment nor prove beyond a reasonable doubt that a defendant had prior convictions in order for a district court to use those convictions for purposes of enhancing a sentence. The Sixth Circuit has noted:

> As a general rule, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be charged in an indictment and must be submitted to a jury and proven beyond a reasonable doubt.  An exception to this general rule is the fact of a prior conviction, which need not be charged in an indictment or submitted to a jury and proven beyond a reasonable doubt.

United States v. Salceda-Guerrero, 88 F. App'x 849, 851 (6th Cir. 2004) (citation omitted). Moreover, courts have rejected the same argument in other cases involving charges under 18 U.S.C.

8

§ 2252. See United States v. Brooks, No. 00-40166, 2000 WL 1901502, at *1 (5th Cir. Dec. 11, 2000) (per curiam) ("As Brooks's increased sentence is based on his prior conviction, that fact was not an element of his offense that had to be alleged in his indictment and found by the jury."); United States v. Stephenson, 159 F. App'x 50, 54 (10th Cir. 2005) (citing Almendarez-Torres and rejecting the defendant's argument that the indictment failed to allege his previous felony conviction); United States v. Harding, No. 05-13576, 2006 WL 531292, at *3 (11th Cir. Mar. 6, 2006) (noting that Almendarez-Torres remains good law and rejecting the defendant's argument that the application of § 2252(b)(2) violated his Fifth and Sixth Amendment rights because his prior convictions were not charged in the indictment or admitted by him).[2]

Finally, Clark argues that his constitutional rights were violated by the eighteen-month delay between the alleged offense and the indictment. To prevail on such a claim, a defendant must show that: (1) his right to a fair trial was substantially prejudiced by the delay; and (2) the Government intentionally caused the delay in order to gain a tactical advantage over the defendant. See United States v. Marion, 404 U.S. 307, 324, 92 S. Ct. 455 (1971). "[A] due process claim of excessive preindictment delay will fail unless the petitioner can show that the government had no valid reason for the delay or that some tactical advantage was sought to be obtained by the delay." United States v. DeClue, 899 F.2d 1465, 1468-69 (6th Cir. 1990). Clark claims that he has suffered prejudice because at the time of the offense he was suffering from bi-polar mental disorder and "[t]he ability of psychologists to now reliably test for and diagnose his condition then is gone." (Def.'s Mot. at

---

[2] Clark also argues that there is a serious question about whether the prior convictions which occurred after the April 2004 offense can be considered prior offenses for sentencing purposes. Because this is a sentencing issue, the Court need not address it at this time. However, the Court notes that the Sixth Circuit recently held, in the context of a charge under 18 U.S.C. § 924(c)(1), that the defendant had a prior conviction at the time of sentencing, even though he had not been convicted of the first offense at the time the indictment was returned. United States v. Perry, 438 F.3d 642, 652 (6th Cir. 2006). Thus, according to Perry, the prior conviction need not exist at the time the defendant commits the offense.

9

5.) Clark offers proof of prejudice through an affidavit showing that he was treated for bipolar disorder in 2004 and that he was no longer being treated for that condition by mid-2005. Clark states that because his condition is now different, he will no longer be able to prove his defenses that he suffered from diminished capacity and is not guilty by reason of insanity.

Clark's prejudicial delay argument must be rejected because he has failed to demonstrate both that the Government had no valid reason for the delay and that his right to a fair trial was substantially prejudiced by the delay. With regard to the first factor, Clark has not even attempted to show that the Government caused the delay solely to gain a tactical advantage or that there was no valid reason for the delay. With regard to prejudice, as the Court noted at the hearing, the delay did not hinder Clark's ability to show that he suffered from a diminished capacity. Clark can present evidence of his previous mental state through his medical records and through the testimony of his mental health provider.

## **Conclusion**

For the foregoing reasons, the Court will deny Clark's motion to suppress and his motion to dismiss.

An Order consistent with this Opinion will be entered.

Dated: June 6, 2006               /s/ Gordon J. Quist
                         GORDON J. QUIST
                         UNITED STATES DISTRICT JUDGE